Good morning, Your Honors. May it please the Court, my name is Jeff Criswell, on behalf of the appellant, Lexington Coal Company. On appeal, Lexington has raised six issues. Three as to liability, seeking full reversal of all orders before the Court, and three as to damages, seeking partial reversal on damages only, and a remand to the District Court with direction to conduct a damages inquest inclusive of DABURT proceedings. Given the short time that I have with Your Honors today, Lexington stands on its briefs on its liability arguments, which can be found in issues 2 through 4 of its principal brief, and I would like to focus my argument on the damages-related issues. Of course, should Your Honors have any questions regarding the liability issues, I'm happy to address them. If this case sits before you, it can start... Wait a minute, I'm sorry. I just want to make sure that I do one question before you move on. Certainly. Am I understanding your position correctly that if we were to find that the District Court's decision after reconsideration denying the motion to enforce did not find as a matter of law that the term sheet was non-binding, then we don't have a law case issue at all? Correct. And if I can, I'll just expand very briefly... Very briefly on that, Your Honor. On the issue of the law of the case, as the appellees have argued that law of the case is inapplicable based upon the issue being a factual determination as opposed to an issue of law, I would point this Court to a case that I regrettably did not cite in my brief, but that is Beautiful Jewelers 438 Federal Appendix 20 from the Second Circuit, 2011, in which this Court stated that under traditional principles of contract law, questions as to what the parties said, what they intended, and how a statement by one party was understood by the other are... But the only term that you are putting forward as missing in terms of the term sheet is what happens in the event of default, though, right? That's the only thing... Correct. And that goes to the type 1 versus type 2 argument, Your Honor. If I may finish on the law of the case point, the Court said that how a statement by one party was understood by the other are questions of fact. However, the matter of whether or not there was a contract in light of the factual findings on these questions is an issue of law. And so our point on that is, Your Honor, at reconsideration, the District Court found that there to be factual issues, and on those factual issues made a legal determination that the term sheet was no longer binding, and such the law of the case would be applicable. Okay. So once we move there, then let me make the last question I would have on this is about Murphy. How would you account for the discussion in Murphy in which we pretty clearly seem to suggest that in the context of a District Court-initiated settlement, that favors finding a type 1 agreement? Yeah. I understand that, Your Honor. But I think what's raised in Murphy and what's evident here is that the parties continued to negotiate significantly post-execution of the term sheet, which is indicative of the fact that all terms were not agreed upon. If all terms were agreed upon, then there would have been nothing to negotiate. But you just said a moment ago that it was only the event of default, right? Correct. Event of default, and then there was also... So the fact that there was... I'm not seeing how, if you think the only term was missing is what happens in the event of settlement, in the event of default, how the settlement discussions... Because part of the settlement discussions was the delivery of thermal coal. It wasn't just an exchange of money. So that delivery of thermal coal was weighed heavy on the settlement, and as a result of that, what would constitute an event of default was a material term. Okay. If I may, proceeding forward on the issue of damages, when the District Court granted summary judgment in September of 2024, the District Court held that the portion of the parties' term sheet concerning thermal coal was enforceable as to the, quote, delivery of thermal coal. The District Court did not reference monetary damages, nor did the District Court reference plaintiff's damages expert report. The District Court concluded its summary judgment order by directing the parties to settle the terms of a judgment, declaring the parties' rights and obligations. In that the District Court directed the parties to settle the terms of a judgment, the District Court's summary judgment order, at least as to the thermal coal issue, can be viewed as an order as to liability only. On that directive, the parties did submit a joint letter to the Court in September of 2024. In that letter, plaintiffs argued that they were entitled to monetary damages on thermal coal per a UCC election of remedies argument that was not raised in any of plaintiff's summary judgment briefing. Conversely, Lexington argued that plaintiffs were entitled only to specific performance, i.e., the delivery of thermal coal, consistent with the language in the summary judgment order. Lexington further argued with citation to authorities that should the Court determine monetary damages are appropriate, that the case should be referred to a magistrate judge for damages inquest. In October of 2024, the District Court ruled Can you explain to me, like, what was the error in not sending it to the magistrate when the District Court explicitly found that appellees were entitled to damages and those should be buyer's damages rather than marketer's damages? Yes, Your Honor. Why wouldn't that be redundant? Certainly, Your Honor. It is not as simple as whether they're entitled to just buyer's damages or marketer's damages. As Lexington wrote in its motion for trial rulings, it's our belief that marketer's damages, not buyer's damages, are appropriate. However, in that the District Court stated that buyer's damages are appropriate, that doesn't end the calculus. As set forth in the motion for trial rulings, there are issues regarding, one, there's a difference between availability of buyer's damages and entitlement to same. And then more importantly, even if you determine that they are entitled to buyer's damages, there's the issue of how you would calculate that amount. And that issue was never really resolved. As we set forth in the motion for trial rulings, buyer's damages are calculated based upon either, A, the cover price minus the contract price, or, B, the market price minus the contract price. Well, why do you think you're entitled to specific performance as opposed to monetary damages? Certainly. On that issue, I would believe that was consistent with what the District Court stated in the summary judgment order. It ruled that the agreement was enforceable as to the delivery of thermal coal. Now, admittedly, the District Court did not use the word specific performance. I understand that. It determined that you failed to deliver. It determined in the summary judgment order that it was enforceable as to the delivery of thermal coal. Now, I understand the implication of that, but I don't believe that the District Court explicitly stated that. But isn't that a kind of a thin reed on which to base a claim that that issue was resolved by the District Court? Your Honor, I would submit with due deference to the District Court, it's a fairly thin opinion on that issue, in that they only stated that it was for the delivery of thermal coal. Now, there was substantial, as we see in letters following that order, discussion of damages. And I, frankly, I don't believe the District Court appreciated the gravity of the issues at hand regarding damages. And on that point, I would Is it your position that you have a legal entitlement to specific performance and there's some juridical bar to an award of damages? Two points on that, Your Honor. I would say that specific performance is consistent with what the parties contemplated and also consistent with the District Court's order. Well, that's almost always the case in a breach of contract case. We contemplated that we would get what we bargained for, what we bought. Certainly. Your Honor, I would state this. We contemplated that damages may be available. These are commodities, right? They are. Fungible. Correct. And don't we usually reserve specific performance for unique or special goods, not just commodities? I would not necessarily disagree with you, Your Honor. I would simply state that the summary judgment order stated delivery of thermal coal. When it then directed the parties to settle the terms of a judgment, I don't know how we could do that other than to be consistent with its order, which contemplated the delivery. So you're conceding that there was non-delivery, and you're not disputing that the UCC 2713 provides for money damages and circumstances of a breach of this sort. You're just saying that the order somehow required specific performance. Yeah. Two points on that, Your Honor. Correct that the District Court was specific that it was the delivery of thermal coal. And two, that election of remedies argument was not raised by plaintiffs in the course of its summary judgment briefing. It was not raised until after, which we would state was inappropriate. And your position is that that line which the judge held Holstein used precluded money damages? I would say our arguments are in the alternative, Your Honor. We submit that the delivery of thermal coal specific performance is appropriate. However, if the court was to determine that monetary damages were the proper reward, which it did, there are several unresolved issues related to monetary damages. And those are set forth in the motion for trial rulings filed by Lexington, which was essentially not adjudicated at all by the District Court. It was terminated. You say that the District Court abused its discretion by adopting the expert report to calculate damages. What was wrong with how the District Court perceived it? Certainly, Your Honor. So the expert report was submitted eight days prior to summary judgment briefing, prior to the close of discovery, prior to the deposition of plaintiff's expert. In opposing summary judgment, Lexington noted its objection to the expert report and did so in the subsequent correspondence to the court. We would submit that we were anticipating a Daubert proceeding and requested the same. There was never an order directing a Daubert deadline. So you're saying that you, that the court should have told you you had to file by X date as opposed to, like, having an entire year and still not filing it? Why didn't you file it? Your Honor, it's particularly I mean, literally eight months since the expert deposition. I understand that. And perhaps that's a decision we should have made at that time. We were expecting there to be a specific scheduling order to that point. Obviously, there was not. So to the extent that was error and not objection to the expert report sooner, so be it. But again, it still does not get to the issue of the motion for trial rulings, which raised significant issues for which you'll see in the record nearly zero commentary from the District Court. But there were three of them, right? And the District Court did two of them. Are we here because you think there weren't factual findings about the cover price or the market price? Is that what this boils down to? Yeah. It boils down to if the court determined monetary damages were appropriate, fine. But with that, there then needs to be an analysis of what is the appropriate type of damages and the calculation of that. And to that point, that is all set forth in the motion for trial rulings, which if you look at the record, all the court did was terminate it without any analysis. Okay. So the error that you're asking us to find is or the abuse of discretion you're asking us to find is that there was no factual findings as to the difference between a market price or a cover price? Yes. Not necessarily the difference between the two, but what the factual record established that there was in fact cover and such that should have been the right price to use. And that's why, again, for the purposes of today's argument, this is for a partial reversal for remand and a damages hearing that would address all of those issues, Your Honor. Thank you very much for your time. Good morning, Your Honors, and may it please the Court. In January and June of 2022, the parties agreed to settle their legal disputes. They reduced their settlement to a written term sheet signed by both parties' CEOs and then a written e-mail confirmation modifying that agreement signed by their lawyers. Those writings contained everything the parties saw fit to negotiate. They didn't specify any issue the parties believed required further discussion. They didn't express any contingency or any reason to believe some additional future negotiation might fail. Let's not forget the parties then told the district court that they had settled the case. Lexington didn't speak up, object, or say the written and signed agreement was nonbinding at that time. The court even conditionally dismissed Lexington's claims. And Lexington didn't argue the signed agreement was nonbinding even then. The reason is simple. The parties here engaged in extensive settlement talks. They agreed on all the terms they saw fit to negotiate, all, and they reduced that agreement to a signed writing. Lexington's only counterargument on this point ever has been that those two writings, the term sheet and the e-mail modification, don't expressly specify what will count as events of default. So can you tell me, though, what do we do about the district court's statement that the term sheet was no longer binding? I don't think that – well, if you look at the order vacating the initial order granting the motion to enforce, it never said that the agreement was nonbinding. Instead, it vacated that underlying order and explained that there are two factual disputes that require resolution. One, whether the term sheet incorporated a price figure for those thermal coal deliveries, and two, what the $1 million cash payment was meant to replace in the e-mail modification. Those two factual disputes were, in fact, resolved in discovery. The parties agree that both issues are resolved. In fact, both parties agree that there never was a dispute as to the price element of the thermal coal deliveries. So the court never held that the term sheet was nonbinding. It held that there was a factual dispute that prevented it granting the order – the motion to enforce. So can you explain to me, though, then, why isn't the terms related to default material terms? Well, even if they are, and I don't think we need to decide whether they are or aren't, there are two problems with Lexington's argument even then. It just isn't true that the term sheet and the e-mail modification didn't include the events of default. Consider first the term sheet, which expressly incorporated the underlying confirmations. And as even Lexington's counsel conceded below, those underlying confirmations specify the events of default and the parties' rights and obligations when those events happen. That's JA-284. So even if that hadn't been the case, there's a second point. The June e-mail incorporates the purchase orders that plaintiffs attached to their motion to enforce. And those purchase orders, again, specify what will count as events of default and the parties' rights and obligations in that event. So there was no gap there. There was nothing left to quibble over or negotiate or nail down. The parties resolved, again, every issue they saw fit to negotiate, again, including the events of default. That makes their agreement, as embodied in the term sheet and then modified in the subsequent e-mail, a binding Type 1 agreement. The parties anticipated but did not require a formalized agreement with some lawyers' embellishments. But the case law is clear. That fact doesn't change the agreement's status as Type 1. And it's worth remembering we are here today not because the parties continued to negotiate about those boilerplate embellishments or some issue the term sheet and e-mails failed to include, not even about events of default. That isn't what happened at all. Instead, we're here today because Lexington wanted to renegotiate the price terms the term sheet and the e-mails expressly did include. There's no question those writings included a price term. Lexington's CEO admitted it. Its counsel has admitted it. Its brief to this court admitted it. But Lexington came not to like the price it negotiated. It wanted a better deal. That reality doesn't change the agreement's Type 1 status either. The parties have an enforceable agreement, and the district court was right to enforce it. Did you cover? Did we? I'm sorry, Your Honor. Did you cover? No, Your Honor. And that is exactly what our expert outlined in detail that we weren't required to cover under the contract. And you, in fact, did not. Is that right? That's correct. That is what the expert opined. Correct. And the only testimony to the contrary, at least as I read Lexington's brief, suggested that plaintiffs continued to sell coal to their customers because, as you noted, coal is a fungible commodity. So we were able to continue to sell coal on. But what we couldn't do, of course, is take the coal we were entitled to buy under the contract and sell that coal off. And so remind me again what you think the damages you're entitled to are. I think they are buyer's damages. And that is made clear, Your Honor, in the e-mail confirmation, which again expressly incorporates the purchase orders that were attached to plaintiff's motion to enforce. We specified buyer's damages. Correct, Your Honor. The purchase orders explicitly say buyer's damages. I think we can all agree that the district court explained that it was providing buyer's damage. What would be your best argument for why or how or if it did enough fact-finding to reckon with Appellate's argument that a cover price should have been used in the calculation? Well, again, that goes right back to the expert determination. And the only evidence put forward was our experts' assessment of the market price and the— So I think you're relying, though, on the fact that the expert report was unrebutted. But we usually are wary of awarding damages based on expert reports alone. Don't we usually require the district court to engage in some sort of fact-finding of its own? Well, and it did that here. It did exactly that, in fact. And it said Joe Zuhl, the expert, was qualified, had 40 years of experience, and used industry standard literature regarding what that market price would be, therefore correctly determining the market price, subtracting out the contract price, and arriving at the damages figure. That's exactly what the court read. Why didn't you use expert testimony to determine whether or not your client covered? I mean, that invoice is in the — in your client's files would have shown that, right? I'm not sure that we would have needed it. But, again, that wasn't an argument at summary judgment that Lexington raised. It didn't say in response to our motion for summary judgment, oh, but wait, they covered, and here's the evidence, and therefore there is a disputed material fact that precludes summary judgment on damages only. Okay. And you're making a representation that, in fact, putting aside the expert's report, in fact, your client didn't cover. That is my understanding, correct, yes. And I do want to spend just a moment on the specific performance issue. By the time the Court entered a ruling here, the deadlines for the performance outlined in the term sheet and the e-mail modifications have long since passed. There was a specific agreement about when Lexington would deliver that thermal cold. And then it passed. It had passed, Your Honor. And I'm prepared to concede, happy to concede, in fact, that courts have a lot of powers. They have powers inherently. They have powers under the rules. They have statutory powers. But I don't think even a federal court can order a party to violate the laws of physics, travel backwards in time, and somehow deliver coal a year ago or two years ago. Damages are the natural remedy here. That's completely expected. And I want to make one final point, Your Honors, in my limited time left, about the fact that I think it's important to remember that Lexington itself filed a motion to enforce based on those e-mail confirmations. It didn't think they were complete, incomplete, or contingent, or in any way unenforceable then. And we can't have a situation where this is like Schrodinger's settlement agreement, both complete and incomplete, both enforceable and unenforceable all at the same time. This was an enforceable settlement agreement. It was type one. It was binding. The summary judgment was absolutely appropriate here. And Lexington has presented no reason to disturb the district court's judgment. This court should affirm. Thank you, Your Honors. We'll hear rebuttal. Thank you, Your Honors. Judge Parker, I'd like to address a question you raised both during my initial argument and also with opposing counsel about the fungible nature of coal and how that might impact cover. Plaintiffs have argued that they did not cover in that they did not go out and buy substitute coal, but they found coal elsewhere and were able to supply it to their customers. I'm sorry. Go ahead. That is covering. The idea that, well, they weren't able to buy Lexington-specific coal, as you stated, coal is fungible. So the fact that they were able to source coal from somewhere else and supply it to their customers and meet their obligations is indicative of the fact that they did cover. And this was testified to by their witnesses during depositions. Further, the only issue, the only evidence put forward, Judge Perez, as you noted, on damages was the expert report. And in that expert report, he's making legal determinations about the market versus cover price. The underlying agreements specifically state that should the plaintiffs cover, then that's the damages used. If they do not cover, then market price is appropriate. The evidence of record shows that they did cover. He disregarded that because that doesn't help his calculation and instead used the market price. That's a legal determination based upon contractual interpretation that is not within the province of their expert. And why wasn't your ability to raise this argument weighed because you didn't respond to the – you didn't take on the expert's report? Isn't that the time to do that? Your Honor, I would submit that the motion for trial rulings in effect did that. What, by the way – I mean, I certainly don't know everything. What is a motion for trial rule? Certainly, Your Honor. What rule authorizes that? We had a status conference in front of Judge Hellerstein maybe September of 2003. At that time, I advised the court of our intention to challenge the issue of damages and asked how to best present that, whether he wanted – almost like a motion in limine. Okay. And he directed to file a motion for trial rulings. So I know it's a little unconventional, but that was the directive of the court. Okay. So this is a – It was a bench – it was to be a bench trial in such that this was a motion. Judge Hellerstein's Rules of Civil Procedure. What's that? Judge Hellerstein's Rules of Civil Procedure. I believe that's an accurate description, Your Honor. Okay. Unless there's any further questions, I have nothing else. Thank you for your time. Thank you both. And we will take the matter under advisement.